United States District Court
Northern District of California

| | |
|---|---|
| THE BOARD OF TRUSTEES, in their capacities as Trustees of the LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; LABORERS VACATION-HOLIDAY TRUST FUND FOR NORTHERN CALIFORNIA; LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA; and LABORERS TRAINING AND RETRAINING TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>ROBERT BEADLES, INC., a California Corporation; and DOES 1 - 10,<br><br>　　　　　Defendant. | Case No.: C 09-02557-PJH<br><br>REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT<br><br>(Dkt. No. 54) |

Plaintiffs the Board of Trustees, in their capacities as Trustees of the Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, and Laborers Training and Retraining Trust Fund for Northern California (collectively referred to as "Trust Funds"), move for default judgment against Defendant Robert Beadles, Inc. pursuant to section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Plaintiffs' motion follows an entry of default by the clerk on April 22, 2010. (Dkt. No. 26.) Defendant has not appeared in this action, nor did it respond to Plaintiffs' complaint or motion for default judgment.

///

On August 15, 2013, the Court held a hearing on Plaintiffs' motion for default judgment, where Defendant did not appear. The Court requested further briefing by Plaintiffs, which was submitted on September 9, 2013. After a review of Plaintiffs' pleadings and moving papers, and for the reasons set forth below, the Court recommends that Plaintiffs' motion be GRANTED IN PART AND DENIED IN PART.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Defendant Robert Beadles, Inc. operates a construction and traffic control business in California and employs unionized workers. (Decl. of Michelle Lauziere in Support of Pls.' Renewed Mot. for Default J., "Lauziere Decl.," Dkt No. 56 ¶ 8). On April 1, 2007, Defendant executed a Memorandum Agreement with the Northern California Laborers District Council (hereinafter referred to as the "Collective Bargaining Agreement"). (Pls.' Renewed Mot. for Default J.,"Pls.' Mot.," Dkt. No. 54 at 2; Lauziere Decl. ¶ 6, Ex. B.) The Collective Bargaining Agreement incorporates the terms of the Laborers Master Agreement (hereinafter "Master Agreement") and the Trust Agreements which govern each of the Trust Funds. (Lauziere Decl. ¶ 16, Ex. C.)  On April 1, 2007, Defendant also executed a Traffic Control/Lane Closure Memorandum Agreement with the Laborers that incorporates the terms of the AGC/Laborers Master Traffic Control/Lane Closure Agreement (collectively referred to as "the Agreements"). (Pls.' Mot. at 2; Lauziere Decl. ¶¶ 4-7, Ex. A-E.)

The Defendant was, and is, an employer within the meaning of Section 3(5) and Section 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145, and an employer in an industry affecting commerce within the meaning of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. (FAC ¶ 3.)

The Agreements require signatory employers to make timely contributions into the above captioned Trust Funds at a specified rate for each hour worked by, or paid to, all employees performing work covered under the Master Agreement. (Pls.' Mot. at 2.) The Agreements also require employers to submit Employer Reports of Contributions to the Laborers Trust Funds, which show the number of hours worked by, or paid to, each employee performing covered work along with the amounts owed pursuant to the Reports. (Pls.' Mot. at 2.)

Additionally, the Agreements also provide for an audit of the books and records of signatory employers so that the Laborers Trust Funds may determine if the employer is making full and prompt payment of the required contributions. (Pls.' Mot. at 3; Lauziere Decl. ¶¶ 15-16, Ex. C §7.)

For the period of August 2008 to November 2008, Defendant reported the hours worked by, or paid to, its employees, but failed to remit the full payments due along with the Employer Reports of Contributions they submitted detailing the amounts owed. Defendant currently owes $22,770.96 in delinquent fringe benefit contributions for these months. (Lauziere Decl. ¶ 11.) Because these contributions were unpaid, the Trust Funds assessed $1,050 in liquidated damages and $23,470.51 in interest against Defendant. (Lauziere Decl. ¶ 11, Ex. F.)

An audit of the books and records of Defendant for the period of January 2007 to December 2008 showed that Defendant owed fringe benefit contributions to the Trust Funds in the amount of $52,108.63 (Lauziere Decl. ¶ 16, Ex. H.) Because those contributions were not reported or timely paid as required by the Agreements, the Trust Funds assessed interest in the amount of $55,082.19. (Lauziere Decl. ¶ 16, Ex. H.)

In addition to these months where Defendant did not submit the required payments, there were several months for which Defendant paid contributions after they were due. (Lauziere Decl., ¶ 12, Ex. G.) The Trust Fund assessed $6,150 in liquidated damages and $8,625.92 in interest for the months of July 2006 through June 2012. (Lauziere Decl., ¶ 12.)

Defendant has refused to pay the amounts owed to the Trust Funds. (Lauziere Decl., ¶ 19.) The Agreements provide for the recovery of attorney's fees and costs in an action to recover contributions and enforce the terms of the Agreement. (Lauziere Decl., ¶ 20.) Plaintiffs have incurred attorney's fees and costs in bringing this action. (FAC ¶ 11.) The expected total attorney's fees are $26,652.50 with costs of $2,362.73. (Decl. of Daniel S. Brome in Support of Pls.' Renewed Mot. for Default J. ("Brome Decl."), ¶¶ 13-14, Exs. A, B.) In light of Defendant's failure to pay delinquent contributions, the plaintiffs also seek an audit to verify the amounts owed by Defendant and seek delinquent contributions owed. (FAC ¶ 28.)

///

The Complaint was originally filed on January 9, 2009 (Dkt. No. 1.) and served on Defendant on June 22, 2009. (Dkt. No. 4.) A First Amended Complaint was filed against Defendant on October 5, 2009. (Dkt. No. 11.) Plaintiffs served Defendant again on October 13, 2009 (Dkt. No. 15.)  Defendant did not answer or otherwise respond to the Complaint.

The clerk entered default against Defendant on April 22, 2010. (Dkt. No. 26.)  On November 24, 2010, Default judgment was granted against Defendant on Plaintiffs' motion. (Dkt. No. 45.)  The default judgment was set aside at Plaintiffs' request following the discovery of an inadvertent, clerical error in serving Defendant. (Pls.' Mot. at 1; Order Setting Aside Mot. for Default J., Dkt. No. 52.)  On July 17, 2013, Plaintiffs filed the renewed motion for default judgment currently before the Court for report and recommendation.

On August 15, 2013, the Court held a hearing, at which Defendant did not appear. Thereafter, the Court requested additional briefing from Plaintiffs on their ability to collect damages incurred after the filing of the First Amended Complaint. (Dkt. No. 64.)  Plaintiffs submitted their brief on September 9, 2013. (Dkt. No. 65.)

## II.   DEFAULT JUDGMENT

### A. Legal Standard

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Id.* at 999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. See *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the Eitel factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,]

4

(6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

**B. Subject Matter Jurisdiction and Personal Jurisdiction**

In this action, Plaintiffs assert claims to enforce the terms of their Agreements and to enforce provisions of ERISA. Accordingly, Plaintiffs' lawsuit is authorized as a federal cause of action. *See* 29 U.S.C. § 1132(a). Subject matter jurisdiction also exists pursuant to the LMRA § 301, 29 U.S.C. § 185(c). *Bd. of Trustees of U.A. Local No. 159 Health & Welfare Trust Fund v. RT/DT, Inc.*, C 12-05111 JSW, 2013 WL 2237871 at *3 (N.D. Cal. May 21, 2013).

The Court has personal jurisdiction over Defendant and venue is proper in this District pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and § 301(a) of the LMRA, 29 U.S.C. § 185(a). An action brought under section 502 "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(f). Under § 301(a) of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a).

Contributions are due and paid in the City and County of San Francisco, which is, therefore, where the alleged breach took place. Defendant is a California corporation, and was served by substituted service and U.S. Mail with a copy of the summons and complaint in compliance with California state law. (Dkt. Nos. 12 and 15.) See Fed. R. Civ. P. 4(e)(1). Thus, the Court has personal jurisdiction.

///

**C. Analysis of the *Eitel* Factors**

Since the Court has jurisdiction in this matter, this Court must turn to the *Eitel* factors to determine whether the entering of a default judgment is appropriate in this matter.

    1. Prejudice

Federal courts have exclusive jurisdiction for claims arising under ERISA, so denial of Plaintiffs' Motion would leave them without a remedy. *Bd. of Trustees of U.A. Local No. 159 Health & Welfare Trust Fund v. RT/DT, Inc.*, C 12-05111 JSW, 2013 WL 2237871 at *4 (N.D. Cal. May 21, 2013). Plaintiff would, therefore, be gravely prejudiced if the Court did not enter default judgment.

    2. Merits of Plaintiff's Claims & Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of Plaintiffs' substantive claim and the sufficiency of the Complaint. *Eitel*, 782 F.2d at 1471–72.

        *a. Unpaid and Late Contributions*

Plaintiffs' claim is for unpaid contributions in violation of ERISA. Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Section 1145 creates a federal cause of action against employers who do not make timely contributions to employee benefit plans, and ultimately allows plan fiduciaries to enforce pre-existing obligations created under the collective bargaining agreement. *Trs. of the Screen Actors Guild–Producers Pension & Health Plans v. NYCA*, Inc., 572 F.3d 771, 776 (9th Cir. 2009).

In order to successfully assert this claim, Plaintiffs must prove the following: (1) the Trusts are multi-employer plans under 29 U.S.C. § 1002(37); (2) the collective bargaining agreement obligated the Defendant to make the employee benefit contributions; and (3) the Defendant failed to make the contribution payments pursuant to the collective bargaining agreement. *Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Gervasio Envtl.*

*Sys.*, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004). In this case, Plaintiffs' Complaint and supporting materials allege facts sufficient to prove the necessary elements.

First, Defendant must be deemed an employer before it is bound to comply with § 1145. *See* 29 U.S.C. § 1145. An "employer" is defined as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan, and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). The FAC sufficiently alleges that the Defendant is an employer within the meaning of § 3(5) and § 515 of ERISA, and an employer in an industry affecting commerce within the meaning of § 301 of the LMRA. 29 U.S.C. §§ 152(2), (6), (7). (FAC ¶ 3.)

Second, section 1145 requires that an employer must be bound under a collective bargaining agreement to make employee contributions to a multi-employer plan. *Bd. of Trs. of the Sheet Metal Workers v. Accu–Balance Assocs., Inc.*, 2006 WL 3591141, at *1–3 (N.D. Cal. Dec.11, 2006). Under ERISA, these plans are defined as employee benefit pension plans that are made pursuant to a collective bargaining agreement and to which more than one employer contributes. 29 U.S.C. §§ 1002(3), (37). Plaintiffs contend that the Trust Funds were set up as employee benefit plans created by a written Trust Agreement pursuant to § 302 of the LMRA and a multi-employer employee benefit plan within the meaning of §§ 3, 4, and 502 of ERISA. 29 U.S.C. §§ 1002, 1003 and 1132. (FAC ¶ 2.) Per the Master Agreement, Defendant was obligated to contribute the amount required by the Agreements for each hour paid or worked by any of its employees who performed any work covered by the Agreements, and that it would be subject to and bound by all of the terms, provisions, and conditions of the Trust Agreements as incorporated by the terms of the Master Agreement. (FAC ¶ 5.)

Lastly, despite Defendant's obligation to contribute to the benefit plans pursuant to the Agreements, Plaintiffs allege that Defendant failed to make timely contribution payments for the months of January 2007 through December 2008, and August 2008 through November 2008. (*Id.* ¶¶ 8, 13.)

Thus, the Court finds that the Plaintiffs have sufficiently stated a claim against Defendant for unpaid and late contributions under ERISA.

### b. Injunctive Relief

Plaintiffs also seek an injunction under ERISA, which authorizes an audit of the records of the employer so long as the audit is done in furtherance of a proper purpose. *Central States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 581 (1985). Plaintiffs allege that Defendant is required to provide access to its books and records to determine the amount of trust fund contributions due and owing. (FAC ¶ 8.) Where a collective bargaining agreement gives Trustees of an employee benefit plan the right to audit an employer's books and records, it will be enforced. *Central States, Southeast & Southwest Areas Pension Fund*, 472 U.S. at 571–72 (1985). Under the parties' Agreements, Plaintiffs are entitled to an audit of Defendant's financial records. (Master Agreement, Lauziere Decl., Ex. C §7.)

### 3. Sum of Money at Stake

The fourth *Eitel* factor focuses on the amount at issue in the action, as courts should be hesitant to enter default judgments in matters involving large sums of money. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Const., Inc.*, No. C 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted).

The sum at stake is Defendant's delinquent contributions, liquidated damages, and interest totaling $169,258.21. (Pls.' Mot. at 4.) Plaintiffs also request reimbursement for the attorney's fees and costs in pursuing this action. (*Id.*) These amounts are generally authorized under the Agreement and are proportionate and appropriately tailored to Defendant's specific misconduct in failing to make timely contributions. Lauziere Decl., Ex. A, Article IV; *see also Bd. of Trustees of Sheet Metal Workers v. ACCU-Balance Associates, Inc*., 05-3470 SC, 2006 WL 3591141 at *2 (N.D. Cal. Dec. 11, 2006). The Court, however, recommends that the fees and costs be reduced as set forth below. *See infra* Part III.C.

///

///

####   4.   The Possibility of a Dispute Concerning Material Facts

With respect to the fifth factor, Defendant has not participated in this action and has not made any attempt to contest any of Plaintiffs' material facts or legal assertions or moved to set aside the entry of default despite being served with all papers.

Defendant was given ample opportunity to respond to the Complaint and participate in the proceedings. Plaintiffs served Defendant on October 13, 2009 when copies of the Summons and Complaint were delivered to Robert Beadle, an agent of the Defendant. (Dkt. No. 15.) Thus, Plaintiffs properly effected service of process. Further, given that Defendant's obligations under the collective bargaining agreement are clear, the possibility for any factual disputes is unlikely. Notably, Plaintiffs' claims for unpaid contributions are based on Defendant's reporting of hours worked and an audit that was performed. Thus, this factor weighs in favor of default judgment.

####   5.   Whether Default was a Result of Excusable Neglect

Plaintiffs properly served Defendant with the Summons and Complaint. Defendant made no appearance in this matter and has not responded to Plaintiffs' motion. Consequently, there is nothing suggesting that Defendant's failure to appear and litigate this matter is based on excusable neglect. *Shanghai Automation Instr. Co. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001).

####   6.   Federal Rules Preference for a Decision on the Merits

After an examination of these facts in the aggregate, this Court finds that *Eitel* factors one through six outweigh the Federal Rules of Civil Procedure's preference for a decision on the merits. This Court therefore recommends an entry of a default judgment.

### III. DAMAGES & INJUNCTIVE RELIEF

After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

In their complaint and in making this motion, Plaintiffs seek: (1) delinquent contributions of $74,879.59, liquidated damages in the amount of $7,200, and interest in the amount of $87,178.62 totaling $169,258.21, plus interest thereon; attorney's fees of $26,652.50 and costs totaling $2,362.73; (2) an injunction ordering Defendant to submit to an audit by Plaintiff Trust Funds, and to pay any amounts found due and owing as a result of that audit; (3) an order permanently enjoining Defendant to timely submit all required monthly contribution reports and contributions due and owing by Defendant; and; (4) that this Court retain jurisdiction to enforce the order compelling audit and the payment of all contributions found due and owing. (FAC ¶ 28; Pls.' Mot. at 4.)

Under ERISA, a plan fiduciary that prevails in a claim for unpaid contributions is entitled to:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>   (i) interest on the unpaid contributions, or
>   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); see also *Bay Area Painters & Tapers v. Brown*, 2007 WL 1302982, at *4 (N.D. Cal. May 3, 2007).

Relief in default judgment is typically limited to amounts due at the time the complaint was filed. Courts in this district, however, have recognized a limited exception in trust fund collection actions, which allows for the collection of damages that come due after filing. *See, e.g., Roofers Local Union No. 81 v. Wedge Roofing, Inc.*, 811 F. Supp. 1398, 1402 (N.D. Cal. 1992); *Bd. of Trustees of Sheet Metal Workers Health Care Trust of N. California v. B.D. Bridon, Inc.*, 1995 WL 573701, at *3 (N.D. Cal. Sept. 19, 1995) ("in view of the legislative history of section 502(g)(2), allowing plaintiffs to seek recovery of contributions that become delinquent after suit is filed would accord with congressional intent."); *Trustees of Bricklayers Local No. 3 Pension*

*Trust v. Huddleston*, 2013 WL 2181532, at *4 (N.D. Cal. May 20, 2013) ("Court notes that while some of the liquidated damages were incurred after the filing of this lawsuit, the Court may nonetheless award Plaintiffs those damages."); *Bay Area Painters v. Alta Specialty*, 2008 WL 114931, at *4 (N.D. Cal. Jan. 10, 2008)("Courts in the Ninth Circuit have made a limited exception to this requirement for delinquent contributions that come due *after* a complaint is filed on the basis that such an approach is consistent with the legislative intent underlying ERISA.") The rationale for the exception is "that it would frustrate ERISA's goals to require trust funds to file successive lawsuits for each new contribution that becomes delinquent." *Bay Area Painters v. Alta Specialty*, 2008 WL 114931, at *4. In recognition of this limited exception, the Court recommends the awarding of damages for unpaid and late contributions that accrued after the filing of the operative complaint.

**A. Unpaid Contributions**

Pursuant to the parties' Agreements, Plaintiffs seek an award of unpaid contributions in the amount of $74,879.59. (Mot. at 4.) In support of this amount, Plaintiffs submit the Declaration of Michelle Lauziere, the Accounts Receivable Manager for the Laborers Funds Administrative Office of Northern California, Inc. As the Accounts Receivable Manager, Ms. Lauziere oversees payment of employer contributions pursuant to collective bargaining and trust agreements, institutes negotiations and collection actions on delinquent accounts, and is responsible for the collection of fringe benefit contributions owed based on an employer audit. (Lauziere Decl. ¶ 2.) Ms. Lauziere's Declaration establishes that Defendant reported the hours worked by, or paid to, each of its employees, but failed to remit the full payments due along with the Employer Reports of Contributions they submitted detailing the amounts owed by them. (*Id.* ¶ 11; Ex. F.) Defendant currently owes $22,770.96 in delinquent fringe benefit contributions. *Id.*

Ms. Lauziere's Declaration also establishes that Fund Office performed an audit for the period of January 2007 through December 2008, and found that Defendant failed to report and failed to pay contributions due and owing for its covered employees for that period, in the amount of $52,108.63. (*Id.* ¶ 16; Ex. H.) The undersigned has reviewed the parties' Agreements and audit summary report and finds that the calculations are accurate. Accordingly, Plaintiffs have

11

sufficiently demonstrated they are entitled to $74,879.59 in unpaid contributions.

**B. Liquidated Damages and Interest**

In addition, Plaintiffs seek interest and liquidated damages on all unpaid contributions totaling $94,378.62. (Mot. at 4.)  Section 1132(g)(2) permits a plan fiduciary to collect interest on all delinquent contributions once they have prevailed on a § 1145 claim. 29 U.S.C. § 1132(g)(2). The "interest [rate] on unpaid contributions shall be determined by using the rate provided under the plan, or if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2).

As to liquidated damages, the Ninth Circuit has made clear that an award of liquidated damages under § 1132(g)(2) is "mandatory and not discretionary." *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co.,* 746 F.2d 557, 569 (9th Cir.1984).  A plaintiff is entitled to a mandatory award under § 1132(g)(2) if the following requirements are met: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award. *Nw. Adm'rs, Inc. v. Albertson's, Inc.,* 104 F.3d 253, 257 (9th Cir.1996).  Any liquidated damages provided in a trust agreement cannot be in excess of 20% of the amount of unpaid contributions. 29 U.S.C. § 1132(g)(2)(C)(ii).

In this case, Plaintiffs have satisfied all three requirements for an award under § 1132(g)(2).  First, Plaintiffs have alleged that Defendant was delinquent in making its contractually obligated payment contributions. (FAC ¶ 13.)  Ms. Lauziere's Declaration also provides a breakdown of all unpaid contributions at the time this action was filed and thereafter. (Lauziere Decl., Exs. F & H.)  Second, the undersigned has recommended that the District Court enter default judgment against Defendant.  Third, the Master Agreement authorizes the award of liquidated damages following an employer's default. (FAC ¶ 5.)

Here, the parties' Agreements provide that when contributions are not paid, or not paid timely, liquidated damages are assessed at a flat fee of $150 per month, along with simple interest at the rate of 1.5% per month, calculated as of the 25th of each proceeding month in which the amount becomes due. (Lauziere Decl. ¶¶ 10, 14.)  Thus, Plaintiffs seek $23,470.51 in interest and $1,050.00 in liquidated damages on contributions that were self-reported, but unpaid for the

period of August 2008 through November 2008. (*Id.* ¶ 11, Ex. F.)

In addition to the months for which Defendant submitted unpaid reports, there were several months from July 2006 through June 2012, for which Defendant submitted paid contributions after they were due. (*Id.* ¶ 12; Ex. G.) The Trust Fund assessed liquidated damages in the amount of $6150.00 and interest in the amount of $8,625.92. (Lauziere Decl., Ex. G.) The Trust Funds did not assess a flat fee of $150.00 for all months—specifically July 2006 through November 2006, February 2007, March 2007, March 2011, and April 2011— because they had already assessed a liquidated damage fee on the original report, which remains unpaid. (*Id.* at ¶ 13.) Thus, only interest was assessed against the delinquent amounts contained on the supplemental reports for these months. *Id.*

In addition, based upon the audit conducted pursuant to the parties' Agreements, the auditor calculated that Defendant owed interest in the amount of $52,082.19 and liquidated damages in the amount of $3,000.00, covering the period from January 2007 through December 2008, when Defendant had failed to report and pay contributions in the amount of $52,108.53. (Lauziere Decl., ¶ 16, Ex. H.)

Based on this analysis, the undersigned finds that Plaintiffs have met their burden of showing entitlement to liquidated damages and interest, and recommends that Plaintiffs be awarded liquidated damages and interest in the amount of $94,378.62.

**C. Attorney's Fees and Costs**

Plaintiffs seek attorney's fees in the amount of $26,652.50 and costs in the amount of $2,362.73. (Mot. at 4.) The parties' Agreements provide that if an employer fails to abide by the terms of the agreement with regard to fringe benefit payment and legal consultation is sought by the Board of Trustees, reasonable attorney's fees, costs, and all other expenses incurred in collections enforcement will be paid by the delinquent employer. (Lauziere Decl. ¶ 20.) Based on this contractual authorization, Defendant should be liable for the reasonable attorney's fees and costs incurred by the Trust Funds in seeking to collect the delinquencies and compel the audit at issue. *Kemner v. Dist. Council of Painting & Allied Trades No. 36,* 768 F.2d 1115, 1120 (9th

Cir.1985). Further, plan fiduciaries who obtain a judgment on a § 1145 claim are also entitled to "reasonable attorney's fees and costs of the action." 29 U.S.C. § 1132(g)(2).

1. Costs

Plaintiffs have submitted evidence indicating they incurred court costs in the amount of $2,362.73, including the filing fee in the amount of $350, service of the summons and complaint in the amount of $895.57, and public records search charges of $3.00. (Decl. of Daniel S. Brome ("Brome Decl."), Dkt. No. 55, ¶ 14; Ex. B.) The amount for the service of the summons and complaint is reasonable, as Plaintiffs had difficulty ascertaining Defendant's identify.  The costs for electronic research in March 2012 in the amount of $285.00, however, is unreasonable, as it pertained to setting aside a default judgment after Plaintiffs' counsel inadvertently served the wrong company with the motion for default judgment due to counsel's clerical error after ascertaining Defendant's identity. (*See* Mot. to Set Aside Default J., Dkt. No. 48.)  As all other costs appear reasonable, the undersigned recommends that the District Court award costs in the amount of $2077.73.

2. Attorney's Fees

To date, Plaintiffs have incurred $25,492.50 in attorney's fees in bringing this enforcement action. (Brome Decl. ¶¶ 13-14, Exs. A, B.) Plaintiffs estimate that the unbilled work associated with the present motion is $1,160. (Brome Decl., ¶ 13.)

Plaintiffs seek $26,652.50 in attorneys' fees. (Brome Decl. ¶ 13.)  Under ERISA § 1132(g)(2), fee awards are mandatory; however, courts should consider the reasonableness of these fees. *Kemmis v. McGoldrick,* 706 F.2d 993, 997–98 (9th Cir.1983) (stating that § 1132(g)(2) "now makes the award of attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund contributions").  The Ninth Circuit has articulated five factors that should be considered in determining reasonable attorney fees: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5)

the relative merits of the parties' positions. *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir. 1980). These factors are intended to guide the court in its discretion, but none of the factors are dispositive; any combination can support an award of fees. *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Acc. Ins. Co.,* 25 F.3d 743, 749 (9th Cir. 1994).

Here, the award of attorney's fees would deter other employers from becoming delinquent on employee contributions because fees can add greatly to the amount of unpaid contributions. An award of fees further encourages employers to be more diligent in their record keeping and prompt with their payment. Also, Plaintiffs' straightforward claims have been adequately supported and the merits of their position are well-grounded. Accordingly, the undersigned finds that the above factors weigh in favor of awarding attorney's fees.

Once fees under ERISA are awarded, the court must calculate the lodestar amount to assess the reasonableness of attorney's fees. *Credit Managers Ass'n of S. Cal.,* 25 F.3d at 750. The lodestar amount is determined by "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* (internal quotations omitted). In awarding attorney's fees, courts must look to the prevailing market rates in the relevant community. *Bell v. Clackamas Cnty.,* 341 F.3d 858, 860 (9th Cir.2003).

In this case, Plaintiffs' counsel billed a total of 90.75 hours in connection with this suit. (Brome Decl. ¶ 4, Ex. A.)  Barry Hinkle is a shareholder with the law firm of Weinberg, Roger & Rosenfeld. (*Id.* ¶ 5.)  Mr. Hinkle has been with the firm for 27 years, specializing exclusively in ERISA work, and has represented trust fund clients in Hawaii, Arizona, Nevada, Alaska, and Northern California. *Id.*  Mr. Hinkle's time was initially billed at the Trust Fund rate of $275.00 per hour, and subsequently at the rate of $325.00 per hour. *Id.*

Patricia Davis is a shareholder with the law firm. (*Id.* ¶ 6.)  Ms. Davis has been with the firm since 1996, working on a variety of Trust Fund matters, including collection cases, tax, and real estate matters. *Id.*  Ms. Davis' time was initially billed at the Trust Fund rate of $275.00 per hour, and subsequently at the rate of $325.00 per hour. *Id.*

Kristina M. Zinnen is a shareholder with the law firm. (*Id.* ¶ 7.)  Ms. Davis has been with the firm since 2006, working on a variety of ERISA matters, including collection work in state

1    and federal courts on behalf of the Trust Fund clients, litigating and counseling issues involving

2    ERISA, trust fund collection, benefit denials, as well as general litigation and arbitration work on

3    numerous cases. *Id.*  Ms. Davis' time was billed at the Trust Fund rate of $275.00 per hour. *Id.*

4    Concepción E. Lozano-Batista is a shareholder with the law firm. (*Id.* ¶ 8.)  Ms. Lozano-

5    Batista has been with the law firm since August 2004, working on a variety of ERISA matters,

6    including collection work in state and federal courts on behalf of a number of trust fund clients,

7    litigating and counseling on issues involving ERISA, trust fund collection, benefit denials, as well

8    as general litigation work on numerous cases. *Id.*  Her time was initially billed at the Trust Fund

9    rate of $275.00 per hour, and subsequently at the rate of $325.00 per hour. *Id.*

10   Daniel Brome is an associate with the law firm. (*Id.* ¶ 9.) He joined the law firm in

11   February 2012. *Id.*  He works on a variety of ERISA matters, including collection work in state

12   and federal courts on behalf of Trust Fund clients, litigating and counseling on issues involving

13   ERISA, benefit denials, as well as general litigation and arbitration work. *Id.*  His time is billed at

14   the Trust Fund Associate rate of $290.00 per hour. *Id.*

15   Eleanor Natwick is a paralegal with the law firm. (*Id.* ¶ 10.)  She has been with the Law

16   Firm for 32 years. *Id.*  During the period of October 1980 to February 29, 2003, Ms. Natwick was

17   an Accounting Clerk with the law firm, working within the accounting department; since March

18   1, 2003, Ms. Natwick was a Litigation Case Clerk. *Id.*  Ms. Natwick earned her paralegal

19   certificate from the University of California at Berkeley in June 2006. *Id.*  On January 15, 2007,

20   Ms. Natwick was promoted to the position of paralegal at the law firm. *Id.*  Ms. Natwick's hourly

21   billable time was initially billed at the Trust Fund rate of $125.00 per hour, and subsequently at

22   the rate of $145.00 per hour. *Id.*

23   Teresa Rojas Alou is a senior paralegal with the law firm. (*Id.* ¶ 11.)  She is a licensed

24   attorney in the Dominican Republic, and has served as a paralegal with the law firm since 2001.

25   *Id.*  Ms. Roja's hourly billable time was billed at $125.00 per hour. *Id.*

26   Judy Castillo is a senior paralegal with the law firm. (*Id.* ¶ 12.)  She has served as a

27   paralegal with the law firm since 2008. *Id.*  Ms. Castillo's hourly billable time was initially billed

28   at the Trust Fund rate of $125.00 per hour, and subsequently at the rate of $145.00 per hour. *Id.*

### a. Reasonableness of the Hourly Billing Rate

To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed. *Credit Managers Ass'n of S. Cal.,* 25 F.3d at 750. In doing so, the court must look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir.2008). Generally, the relevant community is the forum where the district court sits. *Id.*

Here, Plaintiffs' claimed hourly rates range from $125 to $325 per hour. (Brome Decl. ¶¶ 5-12.)  Plaintiffs' hourly rates are within the range found reasonable in ERISA actions by other judges in the Northern District. *See, e.g., Bd. of Trs. Of the Laborers Health and Welfare Trust Fund v. Perez,* 2011 WL 6151506, at *14 (N.D.Cal. Nov.7, 2011) (finding hourly rates of $325 reasonable in ERISA case).  After reviewing Plaintiffs' billing records and considering the experience of counsel, the undersigned finds that the hourly rates are reasonable and consistent with prevailing market rates in the Northern District.

### b. Reasonableness of the Hours Billed

In order to assess whether the number of hours billed is reasonable, Plaintiffs must submit detailed records justifying the hours that have been expended. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986).  The court may reduce the hours through its discretion "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.*

In this case, Plaintiffs' counsel billed a total of 90.75 hours. (Brome Decl. ¶ 4.)  After reviewing the detailed billing records provided in Mr. Brome's Declaration, which offer a breakdown of the work completed and the specific tasks performed, the undersigned finds that the hours billed are unreasonable, as the hours billed from March 2012 forward were the result of Plaintiffs' counsel inadvertently serving the wrong company after positively identifying Defendant Robert Beadles, Inc. (*See* Mot. to Set Aside Default J., Dkt. No. 48; Decl. of Daniel S. Brome in Support of Mot. to Set Aside Default J., Dkt. No. 51.)  This is a clerical error by Plaintiffs' counsel and should not be borne by Defendant in default.  As a result, the undersigned recommends that the 25.5 hours billed by Mr. Brome ($7,395.00) to set aside the initial default

17

judgment and the work billed for the renewed motion for default judgment, and 1.0 hour billed by Eleanor Natwick ($145.00)—for a total of $7,540.00— not be included in the fee award.

The undersigned thus recommends that Plaintiffs be awarded attorneys' fees in the amount of $17,952.50, which represents the itemized fee in Mr. Brome's Declaration absent the cost of setting aside the previous default judgment and the renewed motion, as provided in the preceding paragraph.

In addition, Plaintiffs' initial request also included "expected" fees in the amount of $1,160.00, representing four hours of work billed at $290.00 per hour. (*Id.* ¶ 13.)  Plaintiffs aruge that: "The unbilled work associated with Plaintiffs' Motion for Default Judgment is estimated at approximately $1,160.00 and includes an appearance at the hearing on the motion for default judgment and follow-up work regarding the judgment entered by the Court." *Id.*  First, Plaintiffs would not have had to do this work if Plaintiffs' counsel had served the correct defendant in 2010, when it filed its original motion for default judgment.  Second, given Plaintiffs' failure to provide any legal authority for such an award, the court is disinclined to recommend the awarding of fees for a generalized statement regarding potential future "follow-up work."  Thus, the undersigned recommends that the District Court not increase the fees award by $1,160.00.

Accordingly, the undersigned recommends that the district court award Plaintiffs $17,952.50 in attorney's fees and $2077.73 in costs, for a total of $20,030.23.

**D.  Audit of Defendant's Financial Records and Retaining Jurisdiction**

Under § 1132(g)(2)(E), Plaintiffs are entitled to an audit of Defendant's financial records because the Agreements provide for an audit so that the plaintiffs may determine if the defendant is making full and prompt payment of required contributions. (Lauziere Decl. ¶ 15.) At the time of this filing, Defendant has refused to pay contributions, liquidated damages and interest owed, despite attempts by the plaintiffs to collect the amounts due. (Lauziere Decl. ¶ 19.)

In addition, Plaintiffs request that the Court retain jurisdiction to compel the order compelling the audit.  Because retaining jurisdiction serves judicial economy and promotes fairness, this Court recommends that the district court retain jurisdiction for the limited purpose of enforcing the audit and ensuring the payment of all amounts found due and owing.

### III.     CONCLUSION

For the reasons set forth above, and for good cause shown, this Court RECOMMENDS that Plaintiffs' motion for default judgment against Defendant Robert Beadles, Inc. be GRANTED IN PART AND DENIED IN PART.  Plaintiffs should be awarded:

(1)     unpaid contributions in the amount of $74,879.59;

(2)     interest and liquidated damages on the unpaid contributions in the amount of $94,378.62;

(3)     attorney's fees and costs in the amount of $20,030.23; and

(4)     a mandatory injunction requiring Defendant to submit to an audit of its financial records by Plaintiffs for the period January 1, 2007 to the present.

The undersigned further RECOMMENDS that the District Court retain jurisdiction over the parties and the subject matter to enforce its mandatory injunction and to entertain a motion for a further money judgment, should the audit disclose amounts that may be owed by Defendant.

Any party may file objections to this report and recommendation with the District Judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b); N.D. Civil L.R. 72-2.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *IBEW Local 595 Trust Funds v. ACS Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

IT IS SO RECOMMENDED.

Dated: October 28, 2013

*/s/ Kandis Westmore*
KANDIS A. WESTMORE
United States Magistrate Judge